# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

HEATHER M.C. L.,[1]

    Plaintiff,

    v.

FRANK BISIGANO,[2]
Commissioner of Social Security

    Defendants.

CIVIL ACTION NO. 3:23-CV-01832

(Magistrate Judge Latella)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social

Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of Social Security (hereinafter, "the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  He has been automatically substituted in place of the original defendant, Kilolo Kijakazi.  *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

1

Commissioner") denying Plaintiff Heather M.C. L.'s claim for supplemental security income under Title XVI of the Social Security Act. (Doc. 1).  The matter has been assigned to the undersigned United States Magistrate Judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On December 11, 2020, Plaintiff Heather M.C. L. ("Ms. L") filed an application for Title XVI benefits.  (Doc. 1 at ¶ 6).  In this application, Ms. L claimed disability beginning March 20, 2019.  (*Id*.).  The Social Security Administration ("SSA") initially denied Ms. L's claims on May 6, 2021.  (*Id.* at ¶ 6).  The SSA denied Plaintiff's request for reconsideration on October 7, 2021, finding Plaintiff was not disabled. (*Id*.).  Ms. L filed a request for a hearing before an Administrative Law Judge ("ALJ") on October 18, 2021.  (*Id*.).  ALJ Lawrence J. Neary conducted the requested hearing on February 24, 2022.  (*Id.* at ¶ 8).

2

Later, on July 6, 2022, ALJ Gwendolyn M. Hoover conducted a supplemental hearing.[3]  (*Id.* at ¶ 8; Doc. 7-2 at 34).

The supplemental hearing was necessary because Ms. L's primary mental health treating physician completed Ms. L's mental residual functional capacity form from the standpoint of someone working a part-time job.  (Doc. 7-2 at 35)[4].  Ms. L's attorney received the form, unexpectedly, the day before the hearing.  (Doc. 7-2 at 78-79).  There was not enough time for Ms. L's treating physician to redo the form to assess Ms. L as if Ms. L were to work full-time.  (Doc. 7-2 at 79).  ALJ Neary agreed to admit the incomplete form and leave the record open for 30 days for any additional record to come in.  (Doc. 7-2 at 80).  ALJ Neary concluded the hearing with the instruction that the hearing was "going to be continued and [would] have to be scheduled for a supplemental hearing."  (Doc. 7-2 at 113).

---

[3]ALJ Hoover conducted the supplemental hearing because ALJ Neary was no longer available and the case was reassigned to ALJ Hoover. (Doc. 7-2 at 41).

[4] For the sake of clarity, we refer, in all instances, to the ECF Document number and pagination located in the upper right-hand corner of each page.

In a written opinion dated October 11, 2022, ALJ Hoover determined that Ms. L was not disabled and therefore not entitled to the benefits sought.  (Doc. 7-2 at 9).  Ms. L appealed the ALJ's decision to the Appeals Council, which, on September 22, 2023, denied Ms. L's request for review.  (Doc. 1 at ¶ 10).  On November 3, 2023, Ms. L filed the instant action.  (Doc. 1).  The Commissioner responded on December 14, 2023, providing the requisite transcripts from the disability proceedings held on February 24, 2022 and July 6, 2022.  (Docs. 6, 7).  The parties then filed their respective briefs (Docs. 11, 14), with Ms. L alleging three errors warranting reversal or remand.  (Doc. 11 at 1-2).  The parties consented to proceed before a magistrate judge on November 7, 2023.  (Doc. 5).  This case was reassigned to the undersigned on June 10, 2025.[5]

II.    **THE ALJ'S DECISION**

On October 11, 2022, the ALJ determined: "Based on the application for supplemental security income protectively filed on

---

[5] On June 24, 2025 we issued an Order providing the parties with notice of our intent to continue to exercise the jurisdiction previously consented to by the parties absent any express objection.  (Doc. 15).  No such objections were filed.

December 11, 2020, [Ms. L] is not disabled under section 1614(a)(3)(A) of the Social Security Act." (Doc. 7-2 at 24). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.910. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. The ALJ determined Ms. L "has not engaged in [SGA] since December 11, 2020, the application date (20 CFR 416.971 *et seq*.)." (Doc. 7-2 at 14). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or

combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 416.920(c).  If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found Ms. L:

> has the following severe impairments: major depressive disorder, unspecified anxiety disorder, and personality disorder (20 CFR 416.920(c)).

(Doc. 7-2 at 15).  The ALJ also identified Ms. L's non-severe impairments as: abnormal uterine bleeding post hysterectomy, apnea, neuropathy, anemia, opiate dependence, insomnia, degenerative disc disease, bilateral knee chondrosis, and obesity.  (*Id*.).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d); 416.925; 416.926).  If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 416.920(a)(4)(iii).  The ALJ

6

determined that Ms. L "[did] not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CRF 416.920(d), 416.925 and 416.926)." (Doc. 7-2 at 16).  Specifically, the ALJ considered Listings: 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders).  (Doc. 7-2 at 16).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided.  The ALJ determined that Ms. L:

> has the [RFC] to perform a full range of work at all exertional levels except that the claimant is limited to the performance of simple, routine tasks; can tolerate no more than occasional changes in the work setting; can make no more than simple, work-related decisions; can tolerate no interaction with the public; can tolerate only occasional interaction with coworkers but cannot perform tandem work tasks with coworkers; and can tolerate only occasional interaction with supervisors.

(Doc. 7-2 at 18).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).

7

A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past five years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(i). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Ms. L "[had] no past relevant work." (Doc. 7-2 at 22). At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v).

The ALJ made vocational determinations that Ms. L was 44 years old on the date the application was filed, defined as a younger individual age 18-49 by the Regulations. 20 C.F.R. § 416.963. (Doc. 7-2 at 22). The ALJ also noted that Ms. L "has at least a high school

education" as considered in 20 C.F.R. § 416.964.  (Doc. 7-2 at 22).

Additionally, the ALJ stated that transferability of job status was not

an issue because Ms. L did not have past relevant work.  20 C.F.R. §

416.968.  The ALJ determined that upon consideration of these factors,

Ms. L's RFC, and the testimony of a vocational expert, "there are jobs

that exist in significant numbers in the national economy that the

claimant can perform."  (Doc. 7-2 at 23).  The ALJ specifically identified

occupations of hand packager, cleaner II, hospital cleaner, mail clerk,

and cafeteria attendant.  (Doc. 7-2 at 34).

As a result of this analysis, the ALJ determined that Ms. L was

not disabled and denied Ms. L's applications for benefits.  (Doc. 7-2 at

24).

III.  **STANDARD OF REVIEW**

In order to receive benefits under Title XVI of the Social Security

Act, a claimant must demonstrate an inability "to engage in any

substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of

not less than twelve months."   42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §

416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.  42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).  Unlike Title II of the Social Security Acts's disability insurance benefits, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin,* No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the

10

claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).  The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work.  20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience.   20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record.  *See* 42 U.S.C. §

1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."  *Leslie v.*

*Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).  The question before the Court, therefore, is not whether Ms. L is disabled, but whether the Commissioner's finding that Ms. L is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.   **DISCUSSION**

On appeal, Ms. L asserts three main arguments.  First, Ms. L contends that "the ALJ erred and abused her discretion by failing to consider the limitations in [Ms. L]'s RFC from those impairments that the ALJ considered to be severe, including major depressive disorder,

unspecified anxiety disorder, and personality disorder." (Doc. 11 at 13).

Second, Ms. L argues that the ALJ erroneously failed "to consider the

limitations from those conditions that she did not consider to be severe,

or barely mentioned in her decision." (Doc. 11 at 23.)  Third, Ms. L

contends that the ALJ failed to "afford proper weight to opinions and

limitations from Dr. Matson, Claimant's primary treating source for her

mental-health related impairments." (Doc. 11 at 26).  In response, the

Commissioner maintains that substantial evidence supports the ALJ's

decision and that the Court should affirm the ALJ's decision.

A. THE ALJ'S FAILURE TO CONSIDER ALL LIMITATIONS AT STEP II
   WAS NOT HARMLESS

Ms. L contends that the ALJ erred in not finding that her

degenerative disc disease of the lumbar spine, with spinal stenosis;

incontinence/IBS; right knee pain with diagnosed patellofemoral

syndrome; vertigo; suicidal ideation with three suicide attempts;

cognitive issues; and obesity were not severe impairments under step

two of the five-step sequential process. (Doc. 11 at 23-26).  Ms. L

appears to argue that this was not a harmless error because she alleges

that "the ALJ spent little time, and in most cases no time, considering

or discussing these specific disorders." (Doc. 11 at 24).  The

14

Commissioner asserts that Ms. L "has failed to substantiate her assertion that the ALJ's step two determination was deficient." (Doc. 14 at 24). The Commissioner argues that the ALJ's step two explanation was sufficient and claims that Ms. L cites nothing in the record to support physical limitations. (Doc. 14 at 21-22).

At step two, the ALJ found that Ms. L had the following severe impairments: major depressive disorder, unspecified anxiety disorder, and personality disorder. (Doc. 7-2 at 15). The ALJ also considered evidence of several additional impairments, including: "abnormal uterine bleeding post hysterectomy, apnea, neuropathy, anemia, opiate dependence, insomnia, degenerative disc disease, bilateral knee chondrosis, and obesity." (Doc. 7-2 at 15). The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that she suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimus* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the

analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin,* 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

While an ALJ's "failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found to be severe at step two," an ALJ must consider "all of the medically determinable impairments both severe and non-severe . . . at step two and then at step four when settling the residual functional

16

capacity." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).    A medically determinable impairment results "from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.921.  "[O]bjective medical evidence from an acceptable medical source" is necessary to establish a medically determinable impairment.  20 C.F.R. § 416.921.  Even if a medically determinable impairment is not "severe," an ALJ still must consider it in assessing a claimant's residual functional capacity.  20 C.F.R. § 416.945(a)(2) ("We will consider all your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe[]" . . . when we assess your residual functional capacity.").

The ALJ erred at step two by failing to consider *all* of Ms. L's medically determinable impairments.  Specifically, the Court finds Ms. L's argument that the ALJ did not consider Ms. L's "incontinence/IBS"[6]

---

[6] Ms. L appears to categorize her "incontinence" and "IBS" as one condition.  Both conditions were combined during Ms. L's testimony at the February 6, 2022 hearing.  Ms. L testified to her IBS in conjunction with her testimony regarding her incontinence.  (Doc. 7-2 at 101-102). Ms. L explained that chronic constipation impacted her differently than

her urinary incontinence.  (Doc. 7-2 at 99).  Ms. L's constipation caused stomach cramps and bleeding, prevented her from eating well, and made her want to throw up.  (Doc. 7-2 at 99-100).  Ms. L explained that she "had to use other medications."  (Doc. 7-2 at 100).  ALJ Neary asked Ms. L whether Ms. L had seen a gastroenterologist and, if so, when she saw the gastroenterologist.  (Doc. 7-2 at 99).  Ms. L answered that she saw a gastroenterologist in January of 2022.  (Doc. 7-2 at 99).  Ms. L also stated that the gastroenterologist scheduled her for a colonoscopy on March 3, 2022.  (Doc. 7-2 at 100).  After the February 24, 2022 hearing, Ms. L underwent her colonoscopy as scheduled on March 3, 2022.  (Doc. 7-7 at 1478).  Ms. L's colonoscopy was a "[n]ormal colonoscopy"; the exam only found "mild internal hemorrhoids."  (Doc. 7-7 at 1478).

Despite Ms. L's categorization of the two conditions as one, "incontinence" and "IBS" are separate conditions.  "IBS" or "irritable bowel syndrome" "is a gastrointestinal disorder characterized by the presence of a cluster of symptoms and signs in adults or children that include cramping, abdominal pain, increased gas, altered bowel habits. Food intolerance, and bloating."  Irritable Bowel Syndrome (IBS), MedicineNet.com, https://www.medicinenet.com/irritable_bowel_syndrome_ibs/article.htm (Last accessed July 21, 2026).  "Urinary incontinence" is "the loss of bladder control."  Urinary incontinence, MayoClinic.org, https://www.mayoclinic.org/diseases-conditions/urinary-incontinence/symptoms-causes/syc-20352808 (Last assessed July 21, 2026).

There is limited evidence in the record for treatment for "IBS."  The record mentions treatment for constipation, a possible symptom of IBS, but not treatment for "IBS."  Plaintiff's testimony as to how "incontinence/IBS" impacted her previous job only stated how incontinence impacted her ability to work.  Therefore, this decision will focus on the "incontinence" aspect of Ms. L's claimed "incontinence/IBS."

18

persuasive.  The ALJ's failure to consider Ms. L's incontinence at step two was not harmless because the ALJ did not factor Ms. L's incontinence in Ms. L's RFC at step four.

A thorough review of the record reveals the following.  The ALJ did not mention Ms. L's "incontinence" in the ALJ's step-two analysis. (Doc. 7-2 at 15-16.)  This ailment is absent from the list of "additional impairments" that the ALJ notes "[t]he record also demonstrates the claimant suffers."  (Doc. 7-2 at 15).  The ALJ also did not mention "incontinence" at step four when the ALJ set out Ms. L's RFC.  (Doc. 7-2 at 18-22).

Ms. L did not list "incontinence" as an issue in her initial application papers, in which she listed "DDD," "Major Depression," and "Suicidal depression" as "physical or mental conditions" that limited her ability to work.  (Doc. 7-6 at 11).  Dr. Ziba Monared's consultive exam did not mention Ms. L's issues with incontinence.  (Doc. 7-7 at 136-139). Dr. Monared "reviewed and discussed" Ms. L's "written history form" with Ms. L.  (Doc. 7-7 at 136).  Apparently, Ms. L did not raise this issue with Dr. Monared.

Despite these omissions, the record includes multiple references to "incontinence." (*See, e.g.*, Docs. 7-2 at 98-102; 7-7 at 89, 1154, 1162, 1173). Most significantly, Ms. L raised the condition during the Oral Hearing on February 24, 2022 before ALJ Neary. (Doc. 7-2 at 84-85, 98). Even though ALJ Neary did not see Ms. L's "incontinence and issues with, with her being able to have frequency and issues with that" as "severe impairments," ALJ Neary allowed the issue to be developed at the hearing. (Doc. 7-2 at 84-85).

During the February 24, 2022 hearing, Ms. L responded "yes" when was Ms. L questioned whether "urinary frequency and IBS" had "been an ongoing and consistent problem last year[.]" (Doc. 7-2 at 98). Ms. L testified to: (1) losing ten pounds over a period of two months; (2) going to the bathroom with urinary frequency, on average, "most of the time" and "at least once an hour" "in [her] pants"; (3) missing tables when she was waitressing in 2018 because she kept having to use the restroom; (4) experiencing the condition for about four years; (5) receiving medication that helped with her urinary frequency before she "turned the other way to chronic constipation"; and (6) changing clothes "every hour, every 30 minutes." (Doc. 7-2 at 98, 99, 101). Ms. L

20

referenced a consultation report dated July 22, 2021, in which Ms. L reported to her doctor that she had a history of incontinence for four years.  (Doc. 7-2 at 98, 462).  "Urinary incontinence" was the reason for that consult with Dr. Vanessa Elliott on July 22, 2021.  (Doc. 7-2 at 462).

Following the hearing, as the ALJ notes in her decision, Ms. L "underwent laparoscopically assisted vaginal hysterectomy in June 2022 for complaints of abnormal uterine bleeding."  (Doc. 7-2 at 15; citing Doc. 7-7 at 1154).  The final report from Ms. L's June 2, 2022, pre-operative appointment for that surgery mentioned Ms. L's "urinary incontinence" as an "ongoing problem," and noted that "[Ms. L's] urinary incontinence ha[d] improved with the trospium."  (Doc. 7-7 at 1173).  Ms. L's anesthesia pre-operative evaluation for the surgery, dated June,14 2022, listed "incontinence" and "urinary incontinence" as "confirmed" problems.  (Doc. 7-7 at 1162).  The final report from Ms. L's post-operative follow-up on June 22, 2022 listed "incontinence" and "urinary incontinence" as ongoing problems.  (Doc. 7-7 at 1152).

The issue of incontinence was not addressed at the July 6, 2022, hearing which was held for ALJ Hoover to take testimony from Ms. L

21

and the vocational expert.  (Doc. 7-2 at 36-73).  ALJ Hoover stated during that July 6, 2022 hearing that she was "aware of the testimony that had been previously provided in the case" and would "consider the testimony . . . in the record, from the prior hearing before Judge Neary." (Doc. 7-2 at 41).

Based on the above evidence from the record, the ALJ's decision is not supported by substantial evidence.  "In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable and (2) severe." *Philhower v. Kijaki*, No. 3:21-CV-00641, 2022 WL 3567617, at *5 (M.D. Pa. Aug. 18, 2022) (citing 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921).  Ms. L's incontinence was clearly an impairment.  Ms. L testified to the condition impairing her ability to work because she had to constantly use the restroom.  She also had to change clothes frequently.  Further, Ms. L consulted with her doctor regarding the conditions.  Multiple medical records, as late as June of 2022, list the condition as ongoing. Ms. L's doctor prescribed Ms. L medication to treat it.  Even though Ms. L's urinary incontinence improved with medication, the condition was still notable as of June 22, 2022.  The ALJ considered Ms. L's other

impairments present in the record—Ms. L's anemia, apnea, and insomnia, for example—at step two.  (Doc. 7-2 at 15).  But, despite multiple references in the record, the ALJ did not mention Ms. L's incontinence and state whether it was medically determinable or severe.  It is unclear why the ALJ did not mention Ms. L's incontinence at step two along with some of the aforementioned non-severe impairments that, arguably, had a lesser impact on Ms. L's ability to work.

Even if the ALJ had considered Ms. L's incontinence a medically determinable, non-severe impairment at step two, the ALJ's failure to mention the condition in determining Ms. L's RFC at step four necessitates remand.  The regulations required the ALJ to consider *all* Ms. L's impairments at step four.  *See* 20 C.F.R. 416.945(a)(2).  While the ALJ's "failure to find [Ms. L's incontinence] severe at step two will not render [the] decision defective [because] some other medical condition was found severe at step two[,]" the ALJ needed to consider "all of [Ms. L's] medically determinable impairments both severe and non-severe . . . at step two and then at step four when setting the residual functional capacity."  *Weitzel*, 967 F.Supp.2d at 1097.  It cannot

be concluded that the ALJ's RFC determination is supported by substantial evidence when the ALJ's decision did not mention Ms. L's incontinence at steps two and four. Accordingly, regardless of whether Ms. L's conditions were erroneously considered non-severe impairments at step two, the Court finds that the RFC assessment is not supported by substantial evidence.

### B. THE COURT DECLINES TO ADDRESS MS. L'S REMAINING ARGUMENTS

Because the Court concludes that the ALJ's RFC assessment is not supported by substantial evidence, and has vacated and remanded the decision of the Commissioner for further consideration, the Court declines to address Ms. L's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin,* 156 F.Supp.3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Ms. L's additional contentions would be futile given that the ALJ's decision concerning Ms. L's RFC assessment may yield a different result.

## V.    CONCLUSION

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g) the Commissioner's decision to deny Ms. L disability benefits will be **VACATED** and the case **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: July 27, 2026                **s/ Leo A. Latella**
                                    LEO A. LATELLA
                                    United States Magistrate Judge

25